IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS D. DEMARTINO,                    Case No. 6:12-cv-01097-AA
                                        OPINION AND ORDER
        Plaintiff,

    v.

CITY OF STAYTON,
municipality subdivision
of the State of Oregon;
POLICE CHIEF SEBENS, and
individually; OFFICER MATT
LEONARD, and individually;
UNITED STATES POST OFFICE;
JOHN DOE, postmaster in
Stayton, Oregon; GARY DOE,
clerk;

        Defendants.

---

Thomas D. DeMartino
7182 S.E. Darling Street
Salem, Oregon 97317
    Pro se plaintiff

Gerald L. Warren
Law Office of Gerald Warren
901 Capitol Street N.E.
Salem, Oregon 97301
    Attorney for defendants the City of Stayton, Police Chief
    Sebens, and Officer Matt Leonard

S. Amanda Marshall
U.S. Attorney
Janice E. Hebert
Assistant U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
    Attorneys for defendant the United States Post Office

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

This is yet another in a long line of lawsuits instituted by plaintiff Thomas DeMartino against the government and its employees. In the instant case, plaintiff filed a complaint against defendants the City of Stayton ("City"), the United States Post Office ("USPO"), Police Chief Sebens, Officer Matt Leonard, a John Doe postmaster ("postmaster"), and Gary Doe ("Doe").

The City, Leonard, and Sebens (collectively the "City defendants") move for summary judgment pursuant to Fed. R. Civ. P. 56. In addition, the USPO[1] moves to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). In response, plaintiff filed a motion for partial summary judgment against the City defendants, as well as a motion for summary judgment against the USPO, the postmaster, and Doe. Plaintiff also filed a motion to strike. For the reasons set forth below, defendants' motions are granted and plaintiff's motions are denied. This case is dismissed.

## BACKGROUND

Plaintiff resides in Salem, Oregon. In July 2011, plaintiff arranged to have his mail delivered via general delivery to the post office in Stayton, Oregon. At approximately 11am on October 21, 2011, the postmaster went to the Stayton Police Department to report suspicious activity. The postmaster explained that

---

[1] Because plaintiff has not named any individual federal postal employees in the complaint, the authorization for formal representation by the United States Attorney has not been initiated; nonetheless, the USPO's counsel stipulates that its arguments in favor of dismissal apply equally to the postmaster and Doe. See USPO's Mem. in Supp. of Mot. Dismiss 2 n.1.

plaintiff was receiving general delivery at the Stayton post office, despite the fact that he resided at an out-of-town address that accepts mail and had previously been informed that general delivery is reserved for those who are temporarily transient; it is not to be used in lieu of having a post office box or home delivery.

Based on the postmaster's report, as well as his training and experience, Sebens became concerned that plaintiff may be trying to hide from something, such as an outstanding warrant. Sebens therefore found it appropriate to follow up with plaintiff and to verify his address. As such, Sebens requested that the postmaster call the police station if plaintiff returned to the post office. Subsequently, Sebens contacted several local government agencies to determine if plaintiff was evading a criminal investigation, resulting in Marion County Support Enforcement's request that Sebens verify plaintiff's address.

At approximately 5pm on October 21, 2011, plaintiff went to the post office to pick up his mail. The postal clerk, Doe, removed plaintiff's mail from the shelf and went into a back office; plaintiff waited alone in the lobby for five minutes. While plaintiff was waiting, the postmaster, who was also on the premises, contacted Sebens to report that plaintiff had returned to the post office. Leonard, an on-duty police officer, initially received the call from dispatch, which merely advised that there was an individual at the post office who needed to be contacted. Sebens followed up with Leonard to provide additional information

about the situation.

Thereafter, Leonard went to the post office and spoke to an unknown post office employee, who identified a vehicle that was leaving the parking lot as possibly belonging to plaintiff. Leonard observed a light amount of blue smoke coming from the exhaust and began to follow the vehicle at issue; while doing so, he was informed by radio and cell phone that support services wanted a current address for plaintiff. Leonard then ran the vehicle's license plate and confirmed that it belonged to plaintiff.

As plaintiff's vehicle proceeded, Leonard perceived that the exhaust began emitting a moderate amount of blue smoke. As such, Leonard initiated a traffic stop shortly after plaintiff merged onto Highway 22; Leonard informed plaintiff that the reason for the traffic stop was visible emissions. Plaintiff then revved his engine in neutral and stated that he did not see any exhaust fumes. Nevertheless, plaintiff provided his driver's license, proof of insurance, and registration.

Leonard asked plaintiff whether he was currently living at the address listed on his driver's license. After initially refusing to answer, plaintiff finally answered in the affirmative. Leonard then returned to his vehicle and contacted dispatch who advised that support enforcement, which had an open case with plaintiff, stated the address may be incorrect. Leonard walked back to plaintiff's vehicle and informed him of the need to verify his address. Plaintiff became upset, stating he saw Leonard speaking

with the postmaster and there was nothing wrong with him receiving his mail in Stayton. Ultimately, Leonard elected to give plaintiff a verbal warning instead of a citation; however, pursuant to Stayton Police Department policy, Leonard drafted a written warning for their records. Thereafter, plaintiff contacted Sebens and numerous other City officials in order to express his displeasure at the stop.

On June 19, 2012, plaintiff filed a complaint in this Court, alleging that defendants deprived him of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Plaintiff did not provide any contact information, beyond a general address, when filing his complaint. Accordingly, the parties have been unable to confer in accordance with LR 7-1 regarding the present motions.

### STANDARDS

Where plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). For the purposes of a motion to dismiss, the complaint is liberally construed in favor of plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S.

Page 5 - OPINION AND ORDER

662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Bacca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the

nonmoving party.  <u>T.W. Elec.</u>, 809 F.2d at 630.

## DISCUSSION

Plaintiff's complaint alleges three claims; the first and third claims are asserted against the City defendants, and the second is asserted against the USPO, the postmaster, and Doe.  The City defendants argue that plaintiff's first and third claims should be dismissed because the stop was lawful.  The USPO contends that dismissal of the second claim is proper because 42 U.S.C. § 1983 and 42 U.S.C. § 1985 do not apply to federal agencies or their employees.

I.    <u>First Claim for Relief</u>

Plaintiff first alleges that he was the subject of an illegal stop and conspiracy by defendants in violation of his Fourth and Fourteenth Amendment[2] rights, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.  Plaintiff seeks compensatory and punitive damages, as well as "1000 hours [of] unpaid training [for Leonard and Sebens] with respect to Department policy and the United State's [sic] Constitution, and [that Leonard and Sebens] patrol the community with a sign that reads 'I will never against violate the US constitution and 4th amendment.'"  Compl., Claims for Relief ¶¶ 1-

---

[2] It is unclear how the Fourteenth Amendment is implicated by plaintiff's complaint; while plaintiff states that his rights to travel and to equal protection of the laws have been infringed, there are no factual allegations in support of these legal conclusions.  <u>See generally</u> Compl.  Nevertheless, it should be noted that a lawful police stop does not interfere with plaintiff's right to travel interstate or intrastate. Regardless, because it is vague and factually unsupported, the Court declines to further address this aspect of plaintiff's claim.

4.[3]

A traffic stop constitutes a seizure under the Fourth Amendment and, as a result, an officer must have reasonable suspicion before detaining a motorist. Wren v. United States, 517 U.S. 806, 809-10 (1996); United States v. Colin, 314 F.3d 439, 442 (9th Cir. 2002). Reasonable suspicion exists "when the detaining officer is aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the law is being broken." United States v. Collom, 614 F.2d 624, 628 (9th Cir. 1979), cert. denied, 446 U.S. 923 (1980) (citation and internal quotations omitted). Thus, the reasonable suspicion standard "is less demanding than probable cause, and merely requires a minimal level of objective justification." Gallegos v. City of L.A., 308 F.3d 987, 990 (9th Cir. 2002) (citation and internal quotations omitted).

It is undisputed that the proffered reason for the stop was because Leonard observed visible emissions coming from plaintiff's vehicle, in violation of Or. Rev. Stat. § 815.200. See Leonard Decl. ¶¶ 2, 4-5; Compl. ¶¶ 12, 14. Oregon law provides, in relevant part, that a "person commits the offense of violation of visible emission limits if the person [drives] on any highway [a] motor vehicle [that] has visible emissions exceeding visible emissions allowed under Visible Emission Standard I." Or. Rev.

---

[3] Plaintiff does not include page numbers on his filings; accordingly, when citing plaintiff's pleadings, the Court will refer to the name of the document, the claim or subject heading, and the paragraph number whenever applicable.

Page 8 - OPINION AND ORDER

Stat. § 815.200. "A vehicle exceeds Visible Emission Standard I if
the vehicle produces any visible emissions that include any gases
or particulates, other than uncombined water, which separately or
in combination are visible upon release to the outdoor atmosphere."
Or. Rev. Stat. § 815.195(1).

Here, Leonard was aware of the postmaster's report regarding
plaintiff's allegedly suspicious behavior; Leonard had also been
informed that at least one other government agency was seeking
verification of plaintiff's address. See Leonard Decl. ¶¶ 2-3.
Nevertheless, Leonard initiated the stop at issue only after seeing
visible smoke emanating from plaintiff's vehicle on two separate
occasions. Id. at ¶¶ 2, 4. Further, it is undisputed that
plaintiff's automobile qualifies as a "motor vehicle" and that
Highway 22 constitutes a "highway" within the meaning of the
statute; there is no evidence that any of the exceptions outlined
in Or. Rev. Stat. § 815.205 are applicable in this case.

The Court finds this evidence sufficient to establish the
absence of a genuine issue of material fact as to this matter. The
allegations in plaintiff's complaint, which specify that plaintiff
did not observe any such emissions, are inadequate to survive
summary judgment. See Celotex, 477 U.S. at 323-24. Moreover,
while not dispositive, the Court notes that plaintiff's assertion
is less persuasive, given that he could not clearly see the exhaust
pipe from inside the car, whereas Leonard perceived the vehicle

from behind with an unobstructed view.[4]  In sum, plaintiff failed
to provide any evidence contradicting Leonard's sworn statements
that he observed blue smoke exuding from the exhaust pipe prior to
initiating the stop.  Thus, even if the stop was pretextual, the
totality of the circumstances indicate that Leonard had reasonable
suspicion to stop plaintiff's vehicle due to visible emissions.

In addition, the Court finds that the stop did not last an
unreasonable amount of time.  While not explicit, plaintiff appears
to allege that Leonard unlawfully extended the stop by repeatedly
verifying his address.  See Compl. ¶¶ 12-13.  "A seizure that is
justified solely by the interest in issuing a warning ticket to the
driver can become unlawful if it is prolonged beyond the time
reasonably required to complete that mission."  Illinois v.
Caballes, 543 U.S. 405, 407 (2005).  A reasonableness standard
determines whether an officer's questioning of a driver during a
lawful traffic stop unlawfully extends the duration of the stop.
See United States v. Turvin, 517 F.3d 1097, 1102-03 (9th Cir.
2008).  Officers, however "are not required to move at top speed
when executing a lawful traffic stop."  Id. at 1102.  Further, an
"officer's inquiries into matters unrelated to the justification
for the traffic stop, . . . do not convert the encounter into
something other than a lawful seizure, so long as those inquiries
do not measurably extend the duration of the stop."  Arizona v.

---

[4] In so noting, the Court is mindful of the fact that it may
not make "[c]redibility determinations or weigh the evidence" on
summary judgment.  Reeves v. Sanderson Plumbing Prods. Inc., 530
U.S. 133, 150 (2000).

<u>Johnson</u>, 555 U.S. 323, 333 (2009); <u>see also</u> Or. Rev. Stat. §
810.410(3).

As such, the mere fact that Leonard asked plaintiff what his
address was more than once does not automatically mean that the
duration of the stop was unreasonable.   More importantly,
defendants have submitted evidence confirming that the stop lasted
for less than eleven minutes. <u>See</u> Leonard Decl. ¶ 7.  Plaintiff
has not introduced any evidence to the contrary; while he asserts
in his response brief that "he was detained for 20 minutes, at
least," his complaint indicates that the stop was of a shorter
duration, consistent with Leonard's time line. <u>Compare</u> Pl.'s Resp.
to Mot. Summ. J., Conclusion, <u>with</u> Compl. ¶¶ 9-14.  Regardless,
even if the stop lasted for twenty minutes, the Court cannot
conclude that it was unreasonable, especially given that the stop
was initially extended due to plaintiff's failure to cooperate.

Moreover, plaintiff's contention that the stop was illegal
because Leonard was acting outside of his jurisdiction is without
merit.  Oregon law permits an officer to issue a traffic citation
outside of his or her jurisdictional authority. <u>See</u> Or. Rev. Stat.
§ 810.410(1), (2).

Finally, plaintiff cannot sustain a conspiracy claim under
either 42 U.S.C. § 1983 or 42 U.S.C. § 1985.  The record in this
case lacks any indication that plaintiff was discriminated against
because he is a member of a particular race or suspect class, as is
required under 42 U.S.C. § 1985(3); further, subsections (1) and
(2) are factually inapplicable to the present dispute. <u>See</u> 42

Page 11 - OPINION AND ORDER

U.S.C. § 1985; <u>Burns v. Cnty. Of King</u>, 883 F.2d 819, 821 (9th Cir. 1989) (citation omitted).  Accordingly, plaintiff fail to establish a claim under 42 U.S.C. § 1985.

Likewise, plaintiff cannot state a conspiracy claim under 42 U.S.C. § 1983.  "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." <u>Burns</u>, 883 F.2d at 821 (citation omitted).  Here, plaintiff's allegations regarding the conspiracy are vague and conclusory, and therefore legally inadequate.  <u>See</u> <u>Woodrum v. Woodward Cnty.</u>, 866 F.2d 1121, 1126 (9th Cir. 1989).  In addition, because plaintiff's constitutional rights were not violated by defendants' actions, his claim fails.  <u>Id.</u>  Therefore, plaintiff's motion is denied and the City defendants' motion is granted as to this claim.

## II. Second Claim for Relief

Next, plaintiff alleges that he was illegally detained at the post office when his mail was not promptly delivered on demand, thereby allowing local law enforcement time to arrive.  Further, plaintiff alleges postal officials "went outside of their internal policy" by bringing "mail to the Stayton police chief, ma[king] negative inference to mail, withh[olding] delivery of mail, and us[ing] Citizen's mail for personal reasons, to slander Plaintiff." Compl., Second Cause of Action ¶ 2(a).  As relief, plaintiff seeks compensatory and punitive damages; he also requests the resignation of the federal employees involved in the incident, that postal officials in Stayton be "criminally investigated for conspiracy to

deprive a citizen with a firearm," and that the post office be closed as a "hazard to public safety." Id. at Claims for Relief ¶¶ 3-4.

Plaintiff's second claim is dismissed. "Absent a clear waiver, sovereign immunity precludes suit against the United States." San Carlos Apache Tribe v. United States, 417 F.3d 1091, 1096 (9th Cir. 2005) (citation omitted); United States v. Mitchell, 463 U.S. 206, 212 (1983). Here, the USPO has not consented to suit and plaintiff's complaint does not implicate any independent basis for jurisdiction. As an initial matter, 42 U.S.C. § 1983 and 42 U.S.C. § 1985 do not apply to federal agencies or employees because they are not "persons" within the meaning of those statutes. See Jachetta v. United States, 653 F.3d 898, 908 (9th Cir. 2011); Morse v. N. Coast Opportunities, Inc., 118 F.3d 1338, 1343 (9th Cir. 1997).

Rather, the Federal Tort Claims Act ("FTCA") provides the exclusive means for recovering damages against a federal agency; in other words, the FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees, including Postal Service employees, within the scope of their employment. Dolan v. U.S. Postal Serv., 546 U.S. 481, 484-85 (2006); see also 28 U.S.C. § 2679(b)(1). Congress, however, carved out explicit exceptions to this waiver of immunity, including the "postal matter exception," which precludes liability for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matters." 28 U.S.C. § 2680(b); see also Dolan, 546 U.S. at

489.    Further, the FTCA's limited waiver of immunity does not extend to any claim arising out of "libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h).    Thus, plaintiff cannot assert this claim under the FTCA; however, even if sovereign immunity did not bar this action, plaintiff's claim still fails because he did not exhaust his administrative remedies.    See 28 U.S.C. § 2675(a); see, e.g., Von Croney v. Smith, 1994 WL 59353, *2 (9th Cir. Mar. 1, 1994) (Table).

Finally, even construing plaintiff's complaint as a Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), claim it is still dismissed.    The fact that plaintiff had to wait a few minutes to receive his mail is insufficient to qualify as a Fourth Amendment seizure, especially in light of the fact that he initiated the encounter and does not allege any restraint on his personal liberty.    See Florida v. Bostick, 501 U.S. 429, 434-35 (1991); see also Bivens, 403 U.S. at 396-97.    In addition, an action under Bivens cannot be brought against a federal agency. See Fed. Deposit Ins. Co. v. Meyer, 510 U.S. 471, 485-86 (1994). Further, there is no Bivens action pursuant to the Fourteenth Amendment.    See Erickson v. United States, 976 F.2d 1299, 1301 (9th Cir. 1992) (per curiam).    Therefore, plaintiff's second claim fails as a matter of law and is dismissed.

III. Third Claim for Relief

Finally, plaintiff alleges that the Stayton Police Department[5]

---

[5] The Stayton Police Department "is not a separate entity from the city itself and thus not amendable to suit." Keller v. City of Portland, 1998 WL 1060222, *3 (D.Or. Nov. 13, 1998).

was responsible for his false stop, which was designed to "intimidate, humiliate and place a false police record of warning to intimidate" him.  Further, plaintiff alleges that Leonard was acting outside of his jurisdiction when he pulled plaintiff over. Plaintiff also reiterates his allegations that defendants engaged in a conspiracy to deprive him of his civil rights.

Thus, with the exception of his allegations regarding the Stayton Police Department, plaintiff's third claim is duplicative of his first claim.  Accordingly, for the same reasons set forth in section I, above, plaintiff's claim fails.

Further, liability under 42 U.S.C. § 1983 cannot be premised on a respondeat superior theory; accordingly, a governmental entity may be held liable only if the entity itself acted illegally.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978).  Plaintiff, however, has not alleged any facts indicating that the City or the Stayton Police Department acted in an unlawful matter.  In addition, plaintiff's claim against the City fails because he did not allege the existence of a policy or custom that was the moving force behind the constitutional violations at issue. See Mabe v. San Bernadino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110-11 (9th Cir. 2001); see also Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), cert. denied, 520 U.S. 1117 (1997). Moreover, to the extent that plaintiff asserts a claim for malicious prosecution, his complaint is dismissed because

---

Because he is proceeding pro se, however, the Court construes any allegation against the Stayton Police Department as though it was asserted against the City.

Page 15 - OPINION AND ORDER

defendants did not initiate any criminal proceedings. Therefore, plaintiff's motion is denied and the City defendants' motion is granted in regard to this claim.

Finally, in his various briefs, plaintiff seeks leave to file an amended complaint in order to add a claim, apparently unrelated to the present action, regarding the Aumsville, Oregon general mail delivery. While the Court is mindful of plaintiff's pro se status, his request is denied; if plaintiff would like to amend his complaint, he must first file a formal motion and confer with opposing counsel. See LR 7-1; Fed. R. Civ. P. 7; Fed. R. Civ. P. 15.

## CONCLUSION

The City defendants' motion for summary judgment (doc. 21) is GRANTED. The USPO's motion to dismiss (doc. 36) is also GRANTED. Plaintiff's motions for summary judgement (docs. 19, 30) are DENIED. Finally, plaintiff's motion to strike (doc. 26) is DENIED as moot because the Court did not rely on any of the allegedly objectionable materials in deciding the parties' motions. This case is DISMISSED and all pending motions are denied as moot.

IT IS SO ORDERED.

Dated this 14 of ~~January~~ February 2013.

_Ann Aiken_
Ann Aiken
United States District Judge

Page 16 - OPINION AND ORDER